

U.S. Department of Justice

United States Attorney
Eastern District of New York

NS:EAG
F. #2018R01021

271 Cadman Plaza East
Brooklyn, New York 11201

December 1, 2021

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Joseph Amato, Jr.
Criminal Docket No. 19-442 (S-1) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in connection with the sentencing of defendant Joseph Amato, Jr., (the "defendant") and in response to the defendant's November 24, 2021 sentencing memorandum (the "Def.'s Mem."). For the reasons set forth below, the government joins in the defendant's request for a term of probation and requests that the Court impose a three-year term of probation with stringent conditions (as further described herein).

BACKGROUND

As set forth in detail in the Pre-Sentencing Investigation Report ("PSR"), the defendant committed the offense of racketeering as part of his association with the Colombo organized crime family of La Cosa Nostra (the "Colombo family"). In connection with the Colombo family, the defendant operated an illegal gambling business (PSR ¶¶ 52-53), arranged for extortionate loans (PSR ¶¶ 54-64), participated in an extortion related to a gambling debt (PSR ¶¶ 27-28), committed a violent assault after an individual did not afford respect to the defendant's father (and co-defendant), Joseph Amato,[1] and threatened a bar employee who had potentially crossed his father (PSR ¶¶ 84-86).

---

[1] In June 2014, the defendant and his father, Joseph Amato (hereinafter "Amato"), together with several other members of Amato's crew, viciously assaulted an individual ("I-1") after I-1 expressed indifference as to Amato and his reputation on Staten Island. The night before the assault, I-1 tried to intercede after he saw the defendant

## DISCUSSION

I.      Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005). However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

II.      Analysis

The nature and circumstances of the offense to which the defendant pleaded guilty are, no doubt, serious. As captured on several months of intercepted telephone communications of the defendant and his father, the defendant emulated his father, a captain in the Colombo family with a history of committing violence, and repeatedly relied upon his father's violent reputation to commit crime and earn illegal proceeds. In doing so, the defendant committed crimes of violence, including a serious assault, and conveyed his admiration of the criminal ways of his father. That said, the government agrees with the defendant that the defendant's history and characteristics are more nuanced. While the defendant's criminal conduct was not aberrational, it is fair to characterize most of it as done at the direction (or at least with the strong support) of his father. By contrast, since his arrest and the accompanying separation from his father's influence, the defendant appears to have

---

disrespecting a young woman. In response, the defendant told I-1 that he should mind his own business and when I-1 persisted, the defendant boasted, "Do you know who my father is?" I-1 did not and, as a result, the following day Amato, the defendant and other members of Amato's crew tried to send a message to I-1 and others to ensure that Amato was feared and that he received what Amato believed was the proper degree of respect. Amato and his crew, including the defendant, lured I-1 to an isolated area and then assaulted him, leaving him with significant head lacerations that required staples. The conduct described herein was not included in the PSR. Because it is a relevant fact at sentencing, the government respectfully requests that it be included in the PSR.

made strides towards a law-abiding and productive life, graduating from college, maintaining gainful employment and pursuing graduate studies.

In light of the unique circumstances presented in this case, the government does not oppose the defendant's request for sentence consisting of a term of probation. Should the Court determine to impose a non-incarceratory sentence, the government requests that the Court impose a three-year term of probation (rather than a time-served sentence) and set stringent conditions of probation. Such conditions should include at a minimum:

- that the defendant not associate in any way with felons or members or associates of organized crime, including his father;
- that the defendant perform a meaningful amount of community service;[2]
- that the defendant satisfy his outstanding forfeiture judgment (as he has indicated that he now has the funds to do (see Def.'s Mem. at 6)); and
- that the defendant maintain satisfactory employment or full-time education.

Should the defendant commit a crime in the future or otherwise violate a condition imposed by the Court such as continued association with members or associates of organized crime, including (and especially) the defendant's father, a term of probation – as opposed to a term of supervised release – would further allow the Court to "resentence[] the defendant for the crime of conviction mindful that he ha[d] breached the trust placed in him by a probationary sentence." United States v. Verkhoglyad, 516 F.3d 122, 130 n.6 (2d Cir. 2008) (citing 18 U.S.C. § 3564(e) as "noting that 'sentence of probation remains conditional and subject to revocation until its expiration or termination'", id. § 3565(a)(2), (b) as "providing for sentence of probation to be revoked and for 'resentence'" and U.S.S.G. ch. 7, pt. A, intro. comment. 2(a) as "citing § 3565 to support conclusion that, upon finding of probation violation, 'court may continue probation . . . or revoke probation and impose any other sentence that initially could have been imposed [for the underlying crime of conviction]'").

---

[2] The sentence of course must afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). As the Court is well aware, general deterrence is of great importance in organized crime cases such as this one. Here, a requirement that the defendant complete a meaningful amount of community service would serve to deter others from joining forces with organized crime.

3

CONCLUSION

        For the reasons set forth above, the government respectfully submits that a term of probation with stringent conditions would meet the goals of sentence, as set forth in 18 U.S.C. § 3553(a).

        Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Elizabeth Geddes
Assistant U.S. Attorney
(718) 254-6430

Cc:   Clerk of the Court (BMC) (by ECF)
      Patricia Sullivan (U.S. Probation) (by e-mail)
      James R. Froccaro, Jr., Esq. (by ECF)